UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EASTERN SAVINGS BANK, FSB,

                                 Plaintiff,         MEMORANDUM & ORDER
                                                      13-CV-3633 (ENV) (VMS)

    -against-

MATHEW BOWEN A/K/A MATHEW BOWN, NEW
YORK CITY PARKING VIOLATIONS BUREAU,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU, and "JOHN DOE #1
through JOHN DOE #6," the last six names being
fictitious and unknown to plaintiff, the persons or
parties intended being the tenants occupants, persons
or corporation if any, having or claiming interest
upon the premises described in the Complaint,

                                 Defendants.
-----------------------------------------------------------------X
VITALIANO, D.J.

       On June 27, 2013, plaintiff Eastern Savings Bank, FSB ("Eastern") brought this foreclosure action, resting upon diversity jurisdiction, against defendants Mathew Bowen a/k/a Mathew Bown ("Bowen" or "defendant"), the New York City Environmental Control Board ("ECB"), the New York City Parking Violations Bureau ("PVB"), the New York City Transit Adjudication Bureau ("TAB") and six John Doe defendants.[1] Bowen timely answered, raising eight affirmative defenses, including lack of personal jurisdiction arising from the alleged deficient service of process. The litigation then continued, with Bowen's preserved personal jurisdiction defense lurking in the background. On July 11, 2014, Eastern moved for summary judgment.[2] Bowen responded by cross-moving for summary judgment, seeking dismissal on the

---

[1]     Eastern subsequently dismissed John Does #3-6 from the complaint. See Dkt. No. 36.

[2]     Eastern also moved to amend the caption to correct the spelling of Matthew Bowen's

basis of the Court's purported lack of personal jurisdiction over him. Confronted with this threshold issue, the Court referred the matter to Magistrate Judge Scanlon for an inquest, known in New York as a traverse hearing, into Eastern's service of process on Bowen. Judge Scanlon set a briefing schedule and held two traverse hearings in May and June 2015, and her Report and Recommendation ("R&R") issued on November 30, 2015.[3] See Dkt. No. 59.

For the reasons that follow, Eastern's motion is granted in its entirety. Bowen's cross-motion, consequently, is denied.

## Background

The relevant facts are drawn from the complaint and the submissions of the parties on the motions. With respect to each motion, all facts are viewed in the light most favorable to the nonmoving party. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007). Any factual disputes are noted. In addition, Bowen's pleadings are read with solicitude in light of his pro se status. The traverse hearings, of course, are litigated proceedings and have generated their own record.

*I.    The State Litigation*

On May 3, 2008, Bowen executed and delivered a note to Eastern, acknowledging a debt of $282,500. Affirmation of Terry Brown ("Brown Aff."), Dkt. No. 38-2, ¶ 3. The note

---

name; to amend paragraph 23 of the complaint, nunc pro tunc, to correct a factual misstatement; to substitute Peter Bowen and KMV Driving School, who Eastern believes "have possible leasehold, tenancy, sub-tenancy, possessor or other interests," for the two remaining John Doe defendants; and to default ECB, PVB, TAB, Peter Bowen and KMV Driving School for failure to respond to the complaint. See Dkt. No. 38.

[3]    Judge Scanlon subsequently issued a Supplemental R&R in response to a letter received from Peter Bowen, in which she rejected the points raised in his (untimely and unsworn) opposition and adhered to her previous R&R. See Dkt. No. 62.

accompanied a simultaneously executed mortgage, which secured the note with a lien on Bowen's primary residence, located in Brooklyn. Id. Eastern currently holds both the mortgage and the note. Id., Exs. A-2, A-3. The terms of this financing require Bowen to make monthly payments by the first day of each month, beginning on July 1, 2007. Id. ¶ 7. The note provides that, in the case of a default that remains uncured for 30 days after notice of the default, Eastern may, at its discretion, demand immediate payment of the entire principal balance and interest owed. Id. ¶¶ 9-11.

Beginning on February 1, 2009, Bowen failed to make the monthly payment required by the note, and missed all required payments thereafter. Id. ¶ 15. A short time later, Eastern filed a foreclosure action in Supreme Court, Kings County, which was subsequently dismissed without prejudice for various reasons not relevant here.[4] Id. ¶ 45. During the course of the state litigation, Eastern and Bowen engaged in settlement discussions and, actually, entered into a forbearance agreement. Id. ¶¶ 49-50. The agreement was short-lived and unsuccessful. Id. ¶ 50.

After dismissal of the state case, Eastern sent Bowen a second 90-day notice, on February 5, 2013, pursuant to R.P.A.P.L. § 1304(1), warning that the loan would be accelerated if the default was not cured. Id. ¶ 16. Eastern subsequently sent a second 30-day notice on April 5, 2013, advising that the debt had been accelerated. Id. The default on the accelerated debt, it is undisputed, was not cured. Id., Ex. B ¶ 15.

---

[4] According to Eastern, the state case was dismissed after Supreme Court issued an order directing Eastern to comply with Administrative Order 548/10, which requires certain affirmations to be filed by plaintiffs in foreclosure cases. Id. ¶ 53. Apparently, Eastern never received notice of this order, but, in any event, the case was dismissed without prejudice when Eastern failed to comply. Id. Eastern initially took steps to file an appeal, but opted to abandon the state action in favor of litigating the foreclosure in this Court. Id.

3

## II. *The Federal Litigation*

On June 27, 2013, Eastern commenced this diversity action to foreclose its lien on Bowen's home. Id. ¶ 18. A fundamental dispute ensued concerning the date and propriety of Eastern's service of process. Eastern contends, with the support of a process server's affidavit, that it properly served the mortgagor on July 22, 2013 by leaving a copy of the summons, complaint, and accompanying papers with Peter Bowen, who had claimed to be Bowen's son, at Bowen's residence, with a second copy mailed to him at the home address. Id., Ex. C.

Bowen countered with a series of affidavits vigorously contesting proper service of process. He contends that he first learned of the federal lawsuit when he found a copy of the summons and complaint "lying on the ground near [his] front door." Affidavit of Matthew Bowen ("M. Bowen Aff."), Dkt. No. 43-2, ¶ 11. He further claims that he does not have a son named Peter Bowen, and that he was home at 6:44 a.m. on July 22, 2013, when the summons and complaint were purportedly served on Peter Bowen. Id. ¶¶ 17, 20. Bowen further asserts that the only other people residing at the building at that time were his daughter, Zaneta, and a tenant, neither of whom heard a knock on the door. Id. ¶ 20. In support of his claims, Bowen filed an affidavit from his daughter stating that no one came to the home on the morning of July 22, 2013, that he is the only male residing at the residence, and that she has no full- or half-sibling named Peter Bowen. Affidavit of Zaneta Bowen, Dkt. No. 3. Finally, Bowen submitted an affidavit from his nephew, Peter Bowen, which stated that he had never resided with him at the residence, and that he was working an overnight shift on July 24, 2013.[5] Affidavit of Peter

---

[5] Initially, the affidavits submitted by Bowen focused on July 24, 2013, which is the date the process server's affidavits were completed. He later filed amended affidavits relating to July 22, 2013, which is the date of the claimed service, contending that the first round of affidavits contained a typo. Bowen has not, however, filed an amended affidavit from Peter Bowen, and

Bowen, Dkt. No. 39-5.

Notwithstanding the skirmish over service, it is undisputed that Bowen came to learn of the federal case, and, therefore, filed an answer interposing eight affirmative defenses. Front and center was an affirmative defense claiming improper service of the complaint and R.P.A.P.L. § 1303 notice (first and fourth defenses). Additionally, Bowen's answer asserted affirmative defenses relating to a failure to name the Internal Revenue Service ("IRS") as a necessary party (second and third affirmative defenses), others seeking dismissal under the doctrines of abstention, unclean hands and forum shopping (fifth and seventh affirmative defenses), and, finally, that the terms of the mortgage were unconscionable or predatory, in violation of § 349 of New York's General Business Law (sixth and eighth defenses). The parties again sought to engage in various post-answer settlement conferences, but negotiations apparently stalled when Bowen failed to complete the necessary financial disclosure worksheets during a period when he was facing assorted medical issues. Bowen Aff. ¶¶ 24-26. The instant motions followed.

*III.    The Traverse Hearing*

Recognizing that plaintiff's summary judgment motion could not be decided until Bowen's claim of improper service had been resolved, the Court referred that narrow issue to Magistrate Judge Scanlon to conduct a traverse hearing. Hearings were held on May 8, 2015 and June 2, 2015.[6] A summary of the testimony and evidence presented at these hearings is contained in Judge Scanlon's Report and Recommendation, see Dkt. No. 59, at 6-12, and so a

---

claims he was unable to obtain a corrected affidavit from Peter Bowen within the time allotted for his reply. Def. Resp., Dkt. No. 43, ¶¶ 5-6.

[6]    Eastern was permitted to submit a supplemental brief on the service issue (Dkt. No. 44), and both parties were allowed to submit letter briefs after the traverse hearing had concluded (Dkt. Nos. 56 and 58).

5

brief synopsis suffices for the purposes of this order.

At the hearings, plaintiff provided testimony from David Feldman, the process server, who stated that he had tried to serve Bowen several times at his residence, but had failed to find him there. Id. at 7. On his fourth attempt, on July 22, 2013, Feldman encountered Peter Bowen, who identified himself as Matthew Bowen's son and a co-resident of the subject building. Id. Feldman described Peter Bowen as a black male, approximately 45 years old, five feet ten inches tall and weighing 200 pounds. Id. Feldman testified that he gave the male he identified as Peter Bowen the summons, complaint and related papers. Id. at 8. Eastern also introduced into evidence the affidavit and proof of service, which included a description of "Peter Bowen" matching Feldman's testimony. Id.

Bowen provided testimony from Jay Kim, an acquaintance of Peter Bowen, who described him as approximately 30 years old, five feet seven inches tall, and weighing 250 pounds – a description, in other words, that varied from Feldman's. Id. at 9. Kim acknowledged, however, that she lacked experience estimating ages, heights and weights. Id.

Bowen also called his daughter, Zaneta Bowen, who lives on the second floor of her father's building and who testified that she was at home and awake at the time Feldman claimed to have encountered Peter Bowen. Id. at 9-10. She stated that she did not hear the doorbell ring. She also stated that Peter Bowen does not live in the building and that she had never seen him inside it. Id. at 10. Brown described Peter Bowen as in his late thirties, approximately five feet seven inches tall, and heavyset. Id.

The next witness was defendant Matthew Bowen himself, who testified that he did not hear or see Feldman on July 22, 2013, that he does not have a son named Peter Bowen, and that Zaneta Bowen is the only person who lived with him at the time in question. Id. at 10-11. He

also testified that he learned of the case through "a bunch of white papers" that were left in a mail pan in front of his house shortly before August 1, 2013. Id. at 11.

Last, Bowen called Peter Bowen, who stated that he was Matthew Bowen's nephew, not his son, that he did not live in his uncle's building, and that he was not served by Feldman on July 22, 2013. Id. When the Court showed the witness a picture of Feldman, he claimed not to recognize him. Id. at 12. Yet, Peter Bowen admitted on cross-examination that he was frequently on his uncle's block because his grandmother lived next door to him. Id. at 11. Moreover, Peter Bowen testified that, on July 22, 2013, he was 41 years old and weighed 230 pounds – a description very similar to the one given by Feldman. Id. at 12.

## Legal Standard

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Court's role in assessing the merits of a summary judgment motion is not to try issues of fact. Rather, it is to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)) (emphasis in original). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), and courts must resolve all ambiguities in the evidence and draw all permissible factual inferences in favor of the party opposing the motion. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir.2004); Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn

in favor of the opposing party, summary judgment is improper").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). The nonmoving party may not rely solely on mere "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of . . . the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986) (internal quotations omitted).

## Discussion

*I.   Bowen's Cross-Motion and Defenses*

In a mortgage foreclosure action under New York law, a foreclosing mortgagee plaintiff makes a prima facie showing that would warrant the entry of summary judgment if the plaintiff produces documentary evidence establishing three elements: (1) a mortgage, (2) a note and (3) proof of default on the note by the mortgagor. See U.S. Bank, N.A. v. Byrd, No. 10-cv-3381, 2012 WL 580500, at *4 (E.D.N.Y. Feb. 22, 2012); Builders Bank v. Beach 116-23 LLC, No. 09-CV-2220, 2011 WL 2672567, at *5 (E.D.N.Y. Apr. 15, 2011); Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assoc., 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001); Votta v. Votta Enterprises, Inc., 249 A.D.2d 536, 537, 672 N.Y.S.2d 118, 119 (2d Dep't 1998). When a

8

plaintiff meets its prima facie burden and the defendant does not contest those facts, a presumptive right to collect the overdue amount exists, which can only be overcome by evidence demonstrating the existence of a meritorious affirmative defense. In re Victory Veal, Inc., 186 B.R. 22, 28 (Bankr. E.D.N.Y. 1995); United States v. Freidus, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991); Metro. Distribution Services, Inc. v. DiLascio, 176 A.D.2d 312, 312, 574 N.Y.S.2d 755, 756 (2d Dep't 1991); Regency Sav. Bank, 139 F. Supp. 2d at 465 ("[A] mortgagor is bound by the terms of his contract . . . and cannot be relieved from his default . . . in the absence of waiver by the mortgagee, [] estoppel, [] bad faith, fraud, [or] oppressive or unconscionable conduct on the [mortgagee's] part.").

Eastern has provided the Court with the note and mortgage, as executed by Matthew Bowen. See Dkt. Nos. 38-7 and 38-8. Also proffered on the motion are the various notices sent to Bowen regarding his mortgage and note defaults, including the § 1303 notice. See Dkt. No 38-9. Plaintiff additionally submitted an affidavit by Terry Brown, one of its senior asset managers, attesting to the default and related facts underlying the claim. See Dkt. No. 38-2. While these submissions alone plainly establish Eastern's prima facie showing, Bowen also admits to defaulting on the note and mortgage. See Answer, Dkt. No. 20, ¶ 15. Accordingly, Eastern's motion must be granted unless Bowen can produce admissible evidence in support of at least one of his affirmative defenses showing, at minimum, that there is a triable issue of fact with respect to that defense.

As previously noted, Bowen's primary defense, and the basis for his cross-motion, is that the Court lacks personal jurisdiction over him because he was improperly served with the summons and complaint and the accompanying § 1303 notice. Judge Scanlon's R&R directly addresses and adjudicates this issue. In reviewing a report and recommendation of a magistrate

judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district judge is required to "make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made" by any party, Fed. R. Civ. P. 72(b), but where no timely objection has been made, the "district court need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's report and recommendation. Urena v. New York, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001) (quoting Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

The R&R explicitly provided a deadline for objections within 14 days of entry, i.e., December 14, 2015, and advised that "[f]ailure to file objections within the specified time waives the right to appeal both before the district court and appellate courts" pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). R&R at 23-24. In spite of this clear guidance, Bowen failed to file a timely objection. Having reviewed the R&R and the related papers, the Court is satisfied that there is no error on the face of the record and adopts it. Accordingly, Bowen's service-related affirmative defenses are overruled, and his cross-motion for summary judgment is denied.[7]

---

[7] On January 29, 2016, Peter Bowen filed a letter claiming that, in his testimony at the traverse hearing, he had failed to recall that he spent the night of July 21, 2013 at his home so that he could take his children to school the following morning. See Peter Bowen Letter, Dkt. No. 61, at 1. In response, Judge Scanlon issued a Supplemental R&R finding that the letter did not preclude the possibility that Peter Bowen was also present outside Matthew Bowen's house the morning of July 22, 2013 and received service, as Feldman credibly testified. See Supplemental R&R, Dkt. No. 62, at 2-3. This time, Bowen timely objected. See Dkt. No. 65. First and foremost, Peter Bowen's unsworn letter was incapable of tilting the weight of the evidence presented at the traverse hearing. Like deposition testimony, testimony given at a

10

With this rampart torn down, the rest of Bowen's defenses quickly tumble. For example, scrambling for cover, he claims that dismissal is required because Eastern's complaint failed to include the IRS, which he alleges holds a tax-lien over his property and is, therefore, a necessary party. Even if Bowen was correct in his characterization of the IRS, "[n]ecessary parties are not always indispensable parties . . . whose absence mandates dismissal of the action." In re Comcoach Corp., 698 F.2d 571, 574 (2d Cir. 1983). Rather, "[t]he absence of a necessary party in a foreclosure action simply leaves such party's rights to the premises unaffected." Id. As a consequence, whatever right the IRS might have to enforce its purported lien in this action, it is no life-preserver for Bowen. He cannot escape foreclosure based on the failure of Eastern to name the IRS as a party.[8]

Bowen's final defenses rest on claims of unconscionability and G.B.L. § 349's ban on conduct which misleads consumers. "As a general proposition, unconscionability requires some

---

traverse hearing and subject to cross-examination cannot be called into question by a subsequently filed affidavit or sworn statement, let alone an unsworn letter to the court. See Jill Stuart (Asia) LLC v. Sanei Int'l Co., No. 12 CIV. 3699 KBF, 2013 WL 3203893, at *2 (S.D.N.Y. June 17, 2013), aff'd, 566 F. App'x 29 (2d Cir. 2014) ("Self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment.") Therefore, reviewing the Supplemental R&R de novo, Fed.R.Civ.P. 72(b)(3), the Court finds that there was no error in Magistrate Judge Scanlon's decision to adhere to her original determination. Moreover, even considering the late-filed unsworn statement of Peter Bowen, Magistrate Judge Scanlon's conclusion, on the totality of the evidence, that Feldman's testimony remained credible was reasonable and well within her authority in evaluating the evidence presented at the traverse hearing.

[8]    Since the IRS is not a necessary party, Bowen's subject matter jurisdiction defense, which asserts that including the IRS would defeat full diversity between the parties, is plainly unavailing. If anything, moreover, the presence of the United States as a defendant would *require* the action to be heard in federal district court. See 28 U.S.C. § 1346.

showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Matter of State of New York v. Avco Fin. Serv. Of N.Y., 50 N.Y.2d 383, 389, 429 N.Y.S.2d 181, 406 N.E.2d 1079 (1980). Bowen has not put forth any admissible evidence making the relevant showing that he did not understand the terms of the mortgage loan, or that he was materially deceived. Rather, Bowen's sole grievance is that he entered into a mortgage with a "predatory" interest rate of 12.49%, which he contends is per se unconscionable. Answer at 12. But nothing submitted by Bowen establishes that this assertion is the law, or even faintly contradicts Eastern's factual showing that Bowen was fully informed of the terms of the loan, and voluntarily agreed to them. (See Brown Aff. ¶¶ 58-68). Without such a showing, no material factual dispute exists, and this defense must also fail.

In a similar vein, Bowen's G.B.L. § 349 affirmative defense also fails as a matter of law. Simply put, "[a] deceptive act or practice is an essential element of a cause of action to recover damages for a violation of [G.B.L.] § 349. Contrary to [Bowen's] contention, the loan instrument and other documents submitted by [Eastern] . . . demonstrate[] that the terms of the subject mortgage loan were fully set forth in the loan documents . . . ." Patterson v. Somerset Invs. Corp., 96 A.D. 817, 817 (2d Dep't 2012); see also City of New York v. Smokes-Spirits.com, Inc., 12 N.Y.3d 616, 621, 911 N.E.2d 834 (2009) ("The purpose of [§ 349] was to permit private enforcement against injuries resulting from consumer fraud"). There is no evidence from which a factfinder could conclude that Bowen was misled or misinformed by Eastern in his decision to enter into the mortgage. As a result, dismissal of Bowen's § 349 claim is inescapable, and summary judgment is granted in favor of Eastern on this affirmative defense.[9]

---

[9]    Bowen also purports to rely on the doctrine of abstention and a charge of forum

12

## II. Eastern's Miscellaneous Requests

As previously noted, Eastern also seeks to amend the caption of this action to correct the spelling of Mathew Bowen's name to "Matthew Bowen a/k/a/ Mathew Bowen," as well as to substitute Peter Bowen in place of John Doe #1 and KMV Driving School for John Doe #2. A district court should "freely give leave [to amend pleadings] where justice so requires." Fed. R. Civ. P. 15(a)(2). Eastern has submitted an affidavit demonstrating that Peter Bowen and KMV Driving School have been served with the summons and complaint in this action, and have not appeared, nor have they, in one way or another, opposed Eastern's motion. "As these [parties] have not answered or appeared, there does not appear to be any opposition to adding them as defendants." RTC Mortgage Trust 1995-S/N1, No. 91 Civ. 6885, 1996 WL 689281, at *6 (S.D.N.Y. Nov. 27, 1996). Accordingly, the Court grants Eastern's motion to amend the caption and to add these defendants.[10]

Eastern also seeks to default defendants ECB, PVB, TAB, Peter Bowen and KMV Driving School for failing to respond to the complaint. In compliance with the requirements of Rule 55(a) and Local Civil Rule 55.1, Eastern has submitted an affirmation showing (1) that these parties are not infants, in the military, or incompetent persons; (2) that they have failed to

---

shopping, neither of which constitutes an affirmative defense. These purported defenses are, therefore, summarily dismissed.

[10] The Court also grants Eastern's request to amend paragraph 23 of the complaint, nunc pro tunc, to state: "Plaintiff had previously maintained an action for foreclosure of the Mortgage in the State Supreme Court, entitled Eastern Savings Bank, ftb v. Bowen, Supreme Ct., Kings County Index No. 10826/09 (the "Prior Foreclosure Action"). The Prior Foreclosure Action was dismissed, without prejudice, prior to Plaintiffs commencement of this action. No other action or proceeding is now pending at law or otherwise for the foreclosure of said Mortgage or for recovery of the said sum secured by said Note and Mortgage or any part thereof."

plead or otherwise defend the action; and (3) that the complaint was properly served on them. Accordingly, the Clerk of Court is directed to issue a certificate of default against ECB, PVB, TAB, Peter Bowen and KMV Driving School.

## Conclusion

For the foregoing reasons, Eastern's motion to amend paragraph 23 of the complaint, nunc pro tunc, as previously provided, is granted, as is its motion to default ECB, PVB, TAB, Peter Bowen and KMV Driving School. Lastly, Eastern's motion for summary judgment of foreclosure against all defendants is granted in its entirety. Bowen's cross-motion for summary judgment is denied.

The Clerk of Court is directed to amend the caption to correct the spelling of Mathew Bowen's name to read "Matthew Bowen a/k/a/ Mathew Bowen," to substitute Peter Bowen in place of John Doe #1 and KMV Driving School in place of John Doe #2, and to remove dismissed parties John Does #3 through #6.

Plaintiff is directed to submit a proposed judgment, order of foreclosure and any other papers necessary for their implementation.

So Ordered.

Dated: Brooklyn, New York
May 13, 2016

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge

14