UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

EASTERN SAVINGS BANK, FSB,

      Plaintiff,

  -against-

MATTHEW BOWEN A/K/A MATHEW BOWEN,
PETER BOWEN, KMV DRIVING SCHOOL, NEW
YORK CITY PARKING VIOLATIONS BUREAU,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY TRANSIT
ADJUDICATION BOARD.

      Defendants.

------------------------------------------------------------------- x

MEMORANDUM & ORDER
13-CV-3633 (ENV)(VMS)

VITALIANO, D.J.

A mortgage foreclosure action, this case has been a sustained and tortuous tug of war. In the latest tug, defendant Mathew Bowen objects to the Report and Recommendation ("R&R") issued as to plaintiff's motion for (i) a judgment of foreclosure and sale and (ii) a default judgment against certain nominal defendants. See Dkt. No. 75 ("R&R"); Dkt. No. 70 (Motion for Default Judgment and Judgement of Foreclosure and Sale). For the reasons set forth below, the R&R is adopted with modification.

## Background

This mortgage foreclosure litigation has been on a four year odyssey in this Court. One overriding fact has never been in dispute: the mortgagor defaulted on the mortgage and the mortgage has remained unpaid ever since. These and other pertinent facts have been more than sufficiently reported in prior decisions. See Dkt. Nos. 59, 62, 75; see also E. Sav. Bank v. Bowen, No. 13-CV-3633ENVVMS, 2016 WL 2888997 (E.D.N.Y. May 17, 2016). Familiarity of the

1

parties is presumed. Given the undisputed nonpayment of the mortgage, and with no redemption in sight, the virtually inevitable end of this litigation has come: ESB's request to enter a judgment of foreclosure and sale.

That result was precipitated when, on July 26, 2016, ESB moved for an order granting (i) the judgment of foreclosure and sale against Bowen, pursuant to Federal Rule 54, and (ii) default judgment against the procedurally defaulting defendants, pursuant to Federal Rule 55(b)(2) and Local Civil Rule 55.2(b). *See* Dkt. No. 70. As directed by the Court, ESB attached a proposed judgment of foreclosure and sale to its motion papers. *See* Dkt. No. 70-5. Bowen objected to the terms of the proposed judgment of foreclosure of sale on the grounds that it utilized an "extremely high interest rate" and provided for "outrageously high attorneys' fees and other costs . . . ." Dkt. No. 72. The Court respectfully referred ESB's motion to Magistrate Judge Vera M. Scanlon, who, on February 6, 2017, issued a R&R including, as an Appendix, a slightly revised proposed judgment of foreclosure and sale, Dkt. No. 75-1. Written objections were due within 14 days. *See* R&R at 19.

On February 24, 2017, four days after the objection period had expired[1], Bowen submitted objections to the R&R in which he primarily disputed the amount of recommended damages. *See* Dkt. No. 76 ("Bowen Obj."). Specifically, Bowen objects to the late fees assessed on the loan, the hazard insurance charges, the interest assessed on the negative escrow, and the calculation of water and sewer charges. *Id.* ESB timely responded to Bowen's objections on March 10, 2017. *See* Dkt.

---

[1] Because Bowen's objections were untimely the Court could review Judge Scanlon's R&R against a clear error standard. *See Martinson v. U.S. Parole Comm'n*, No. 02CV4913KMK, 2005 WL 1309054, at *3-4 (S.D.N.Y. June 1, 2005). Bowen, however, is not represented by counsel and, therefore, is entitled to special solicitude. *See Chinnery v. N.Y. State Office of Children & Family Servs.*, No. 10 CIV. 0882 DAB, 2015 WL 1029601, at *1 n.1 (S.D.N.Y. Mar. 10, 2015), *appeal dismissed* (Oct. 22, 2015). With solicitude, then, the Court grants Bowen an extension of time, *nunc pro tunc*, through the date his objections were filed. *See id.* His objections will, as a result, be reviewed under the same standard that would apply had they actually been filed in a timely manner.

No. 77. Having reviewed the R&R, Bowen's objections, ESB's responses and the record itself *de novo*, the Court now adopts the R&R, with modification, as the opinion of the Court.

## Legal Standard

In reviewing a report and recommendation of a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Further, a district judge is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). But, as to "those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record" in order to accept it. *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).

## Discussion

I.  Judgement of Foreclosure and Sale

The most consequential findings set forth in the R&R are unchallenged. Specifically, no party objects to following findings: (i) that the outstanding principal balance owed by Bowen to ESB is $279,632.45, *see* R&R at 7; (ii) that ESB should be awarded $225,849.75 in interest accrued on the unpaid principal, *see id.* at 8; and that (iii) ESB should be awarded $14,887.50 in attorney's fees and $3,051.97 in costs, *id.* at 10-18. These conclusions are correct, well-reasoned, and free of any clear error. They are adopted by the Court.[2]

---

[2] The R&R correctly sets out that the $225,849.75 award accounts for interest through July 15, 2016. R&R at 7.

a. *Unpaid Late Charges*

Bowen does dispute the computation of late fees proposed by ESB and adopted in the R&R. The terms of the Note control, which provide that if ESB did not receive the full amount of any monthly payment by the end of 15 calendars days after the date on which the payment was due, the borrower was subject to a late charge of 5% of the overdue payment of principal and interest. *See* Dkt. No. 1 ("Compl. & Note") at 13.[3] Under this provision, ESB seeks $7,400.23 for the totalized unpaid late charges that accrued each month from December 16, 2008 through April 16, 2013, (the date on which ESB claims that the loan was accelerated).[4] Both parties appear to agree that the late charges are only calculated from the date of default to the date of acceleration. *See* Dkt. No. 70-2 at 4; Bowen Obj. Bowen, however, argues that the late fee period should be trimmed down to "at most, a few months" since the "subject loan was accelerated in early 2009 before the first foreclosure filing in state court." Bowen Obj. at 1.

"It is well established [law] that[,] while an election to accelerate must be exercised affirmatively by some overt act, exercise of the option to accelerate the maturity of a mortgage is not dependent upon a notice of default or a demand for payment of any defaulted installment unless the mortgage, by its terms, requires otherwise." *650 Brooklyn LLC v. Hunte*, 47 Misc. 3d 885, 893-94, 3 N.Y.S.3d 909, 915 (N.Y. Sup. 2015) (citing *Charter One Bank, FSB v. Leone,* 45 A.D.3d 958, 958, 845 N.Y.S.2d 513 (3d Dep't 2007)). Indeed, under New York law, "[c]ommencement of a foreclosure action may be sufficient to put the borrower on notice that the option to accelerate the debt has been exercised." *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 983, 943 N.Y.S.2d 540 (2d Dep't 2012); *see also Albertina Realty Co. v. Rosbro Realty Corp.*, 258 N.Y. 472, 476, 180 N.E.

---

[3] All citations to the Complaint & Note are to the Electronic Case Filing pagination.

[4] ESB provides a chart that breaks down late fee accrual from December 16, 2008 to April 16, 2013. Dkt. No. 70-2 at 18.

4

176 (1932); *Clayton Nat., Inc. v. Guldi*, 307 A.D.2d 982, 763 N.Y.S.2d 493 (2d Dep't 2003) ("The filing of the summons and complaint .... accelerated the note and mortgage[.]"); *accord E. Sav. Bank, FSB v. Whyte*, No. 13-CV-6111 CBA LB, 2015 WL 790036, at *7 (E.D.N.Y. Feb. 24, 2015) (awarding late fees up to the date the action was commenced).

There is no question that, in May 2009, years before filing the instant action, ESB instituted a foreclosure proceeding in Supreme Court, Kings County. *See* Dkt. No. 20 at 6; Dkt. No. 77 at 5-6. That state court action was dismissed without prejudice. *See* Dkt. No. 38-2 at 12-14; Dkt. No. 38-22. Patently, the commencement of the state court action served as an acceleration of the mortgage. This objection filed by Bowen is, as a consequence, sustained to the extent that the late fees to be included in the judgment are reduced from $7,400.23 to $527.35, which represents late fees running from February 2009 to May 1, 2009, when the original foreclosure action was filed by ESB in Supreme Court.[5] *See* Dkt. No. 70-2 at 19; *see also* Compl. & Note at 4 (setting the default date in February 2009).

b. *Escrow Advances*

Bowen next objects that the amount awarded to ESB in escrow advances is "excessive and unreasonable." Bowen Obj. at 1. Stated simply, Bowen takes issue with two separate components of the $90,087.45 recommended by Judge Scanlon as the escrow advance award: (i) that the amount assessed for hazard insurance is exploitatively high, and (ii) that the sewer and water fees to be awarded were never paid by ESB.

Not surprisingly, since it is very much in the ordinary course of things, Bowen was required by the mortgage terms to reimburse ESB for expenses paid by ESB in maintenance of the mortgaged property. Those escrow items included "taxes, assessments, water charges, sewer rents

---

[5] This amount is inclusive of $150.67 (2/17/2009 late fee); $150.67 (3/16/2009 late fee); $150.67 (4/16/2009 late fee); and $75.34 (5/1/2009 late fee).

and other similar charges, . . . hazard or property insurance covering the [p]roperty, [and] flood insurance (if any) . . . ." Compl. & Note at 24. The mortgage also specifically authorized ESB to "pay for whatever is reasonable or appropriate to protect [ESB]'s interest in the [p]roperty . . . ." *Id.* at 28. Further, Bowen was required to pay ESB "any amounts, with interest, which [ESB] spends" to protect its interest in the property. *Id.* Given this standard language, recovery of escrow disbursements is far from rare in foreclosure actions. *See, e.g., OneWest Bank, N.A. v. Denham*, No. CV 14-5529 DRH AKT, 2015 WL 5562980, at *10 (E.D.N.Y. Aug. 31, 2015) (recommending an award including escrow advances), *report and recommendation adopted*, No. 14 CV 5529 DRH AKT, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Onewest Bank, N.A. v. Cole*, No. 14-CV-03078 FB RER, 2015 WL 4429014, at *5 (E.D.N.Y. July 17, 2015).

Providing record support for the escrow advances it claims and the amount awarded to it in Judge Scanlon's R&R, *see* R&R at 10, ESB points to its submission of more than 75 pages of tax documents, water and sewage receipts, and insurance invoices showing its escrow expenses from 2010 to 2016. Dkt. No. 70-2 at 4, 21.[6] In addition to providing an evidentiary basis to support award calculation, the documents also demonstrate that Bowen has been on notice of these charges for many years.

Focusing first on the hazard insurance, Bowen claims that the approximately $25,000 that ESB paid over the course of almost six years is exorbitant. Bowen contends that a reasonable amount for such insurance coverage should not exceed $8000. Critically, various documents sent by ESB to Bowen over the course of his default not only gave him notice of the hazard insurance it was purchasing for his property, but also gave him ample opportunity to purchase insurance at a lower price on the open market, if he could find it. For example, a letter to Bowen entitled

---

[6] ESB also provides a summary chart that totals each Escrow Item payment (the "Escrow Items Chart"). *See* Dkt. No. 70-2 at 21.

6

NOTICE OF LENDER PLACED HAZARD COVERAGE, dated March 12, 2015, states in pertinent part:

> Enclosed is a lender placed policy we have purchased on your behalf at your expense in accordance with the terms of your mortgage agreement.
>
> The insurance purchased:
>
> - **Costs $2,763.00 annually, which may be significantly more than hazard insurance you can purchase yourself.**
>
> ...
>
> You may obtain a refund for a portion of these charges if you provide us with satisfactory proof that you have purchased your own hazard coverage while the lender placed hazard insurance is in effect.

Dkt. No. 70-2 at 36 (emphasis in original); *see also id.* at 49 (2014 Letter).

Whether or not this insurance policy was a bargain is not the point. Nothing in the record evidence even remotely suggests that the coverage purchased by ESB was not an arm's length purchase on the open market. Pointedly, the letter put Bowen on notice that he should seek other coverage and, in fact, that he might find coverage at a significantly cheaper rate. He elected not to do so. Had he tried, perhaps he would have found coverage that, even if he could not afford it, might have provided evidence now to support his objection. As it stands, that objection is only nakedly asserted.[7] Plainly, under the rights granted in the mortgage and in the exercise of common sense, ESB acted quite properly in acquiring the hazard insurance it acquired to protect its secured

---

[7] Bowen's $8,000 "suggest[ion]" is purportedly a "[q]uote from the New York Property Insurance Underwriting Association" for "[f]ire insurance only." Without more, it is unclear how Bowen went about calculating this, what terms were used to generate the quote, and why the quote was for "fire insurance only[,]" making the $8,000 suggestion of little utility here. Bowen also makes reference to an unnamed class action in Florida against Wells Fargo where "banks paid hundreds of millions in fines for abusing and excessively profiting from overcharging homeowners for (forced placed Insurance)." Bowen Obj. at 1. The reference is wholly unrelated to this action and absolutely irrelevant.

interest and Bowen's equity in the mortgaged premises. This branch of Bowen's objection to the escrow advances of Judge Scanlon's R&R is, consequently, overruled and her R&R as to these findings is sustained and adopted in the Court's opinion.

The second branch of this objection attacks the amount awarded in the R&R to cover the water and sewage charge reimbursement. Bowen Obj. at 2. ESB calculates a total of $55,973.16 in water and sewer rate payments it paid covering the period from 2010 to 2016, that are broken out into five payments. *See* Dkt. No. 70-2 at 21. Bowen targets, claiming it a fabrication, the first of the five payment, which, ESB claims was $22,626.03. ESB's records reflect that the payment was made in March 2010. *See id.* This time Bowen offers a document to support his contention. His objection presents what appears to be a February 24, 2017 printout from the New York City Department of Environmental Protection ("DEP") Bureau of Customer Service. It is titled "Account Payment History from 01/01/95" for Bowen's property. As its date establishes, long after the filing of Judge Scanlon's R&R, this document makes its first appearance in the litigation. The document lists the other four payments, but does not reflect that first claimed payment that Bowen now challenges.[8] *See* Bowen Obj. at 5.

Bowen's submission of the DEP document triggers a prefatory adjudication. Given its creation after the filing of the R&R, *see* Bowen Obj. at 5, the Court must first determine whether it will consider the DEP document at all. A reviewing district court most assuredly has discretion to consider new evidence raised for the first time in an objection to a magistrate judge's R&R. *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But, it is also free to exercise its discretion to

---

[8] The printout also lists a payment of $515.63 made on November 7, 2016 which ESB is not seeking to recoup at this time. It was not included in the calculations because, very simply, it was made after ESB's Proposed Judgment of Foreclosure and Sale was submitted to the Court. *See* Dkt. No. 77-1 at 2 n.1. This payment does, however, indicate that ESB continues to make water and sewage payments for Bowen, even now.

8

refuse to consider it. *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) (finding no abuse of discretion in district court's refusal to consider supplemental evidence); *Amadasu v. Ngati*, No. 05-CV-2585 RRM LB, 2012 WL 3930386, at *4 (E.D.N.Y. Sept. 9, 2012).

There is not the slightest pretense of explanation for the tardiness of Bowen's proffer of the DEP accounting in support of his objection. He had plenty of time to secure it and submit it for Magistrate Judge Scanlon's consideration on the referral to her of ESB's motion for judgment of foreclosure and sale.[9] Confronted by the unassailable truth of mortgage nonpayment, the post-R&R submission of the DEP accounting is entirely in keeping with Bowen's approach to this litigation, which, mot charitably, can be characterized as foot-dragging. The proffer at best is equivocal. Indeed, it confirms four out of five of ESB's claimed payments. At the same time, it does not, by its terms, refute the payment of the fifth installment, though it could be used to support that conclusion. (More about that later.) On those facts and history, the Court declines to exercise its discretion to permit consideration of the proffered DEP accounting in its *de novo* review of this objection. Without it, nothing in the record undermines Judge Scanlon's conclusion that all five payments were made by ESB to cover water and sewer charges, and that they should be included in the judgment. Bowen's objection to the inclusion of the fifth payment is overruled.

In any event, even if the Court were to consider Bowen's proffered DEP accounting, it would change nothing. Quite to the contrary, it would confirm the truth of ESB's own submission. ESB's own business records, submitted long ago, reflect that the water and sewer payment not shown in the DEP accounting was not made to DEP in the first place, but, rather, to the entity, NYCTL 2009-A Trust Xspand ("Xspand"), to which the City had apparently sold delinquent water

---

[9] Bowen was also provided multiple extensions to oppose ESB's motion for judgment of foreclosure and sale. *See* 8/16/2016 Dkt. Entry; 9/13/2016 Dkt. Entry (granting extension *nunc pro tunc* after Bowen missed deadline).

9

and sewer charges for collection. In sum, Bowen's proffered submission confirms that four payments were made to DEP. But it does not establish that the fifth was never made. The record, including the DEP accounting, thus, clearly establishes that the challenged payment was made to Xspand. *Compare* Dkt. No. 70-2 at 97 (check voucher for first water/sewage payment made to Xspand), *with id.* at 96 (check voucher for second water/sewage payment made to DEP), *and* at 76 (check voucher for third water/sewage payment made to DEP), *and* at 46 (check voucher for fourth water/sewage payment made to DEP), *and* at 31 (check voucher for fifth water/sewage payment made to "NYC Water Board," which operates through DEP). Bowen's proffer hardly reflects the revelation of a state secret. As explained by ESB, Xspand was a lienholder for a past-due water and sewer charge from 2008-2009. *See* Dkt. No. 77-1. In short, the check vouchers submitted by ESB in July 2016 are completely consistent with an award that all five payments be included in the escrow advances to be awarded to ESB, as the R&R concludes.

The *de novo* review of the objection, however, did uncover a few anomalies that do preclude the award of the full amount recommended in the R&R ($90,087.45). As will be fleshed out later, there are inconsistencies in ESB's records making the more appropriate escrow advance award to be $87,014.49.

c. *Interest on Escrow Advances*

Finally, and related to the escrow advance award, Bowen claims that the interest rate calculated on the escrow advances to be excessive, and inaccurate. He requests a reduction to the arbitrary amount of $1,000. Bowen Obj. at 2. By way of background, ESB submitted an escrow interest chart which purports to document changes in Bowen's escrow balance, as well as the per-diem interest that accrued on this balance. Dkt. No. 70-2 at 101 (the "Escrow Interest Chart"). Bowen argues that the Escrow Interest Chart is inconsistent with the chart discussed earlier, the

10

Escrow Items Chart, which sets out the individual escrow item payments made by ESB, including escrow advances.

On this point, although the interest rate is not itself excessive[10] (and, in fact, comports with the interest rate set forth in the Note, *see* Compl. & Note at 15), the Court agrees with Bowen that certain inconsistencies are made apparent upon close inspection of ESB's two escrow-related charts. The Escrow Interest Chart records certain deductions from the escrow balance that are not shown on the Escrow Items Chart. *See* Escrow Interest Chart at 7/30/2010 Entry, 2/1/2013 Entry, 12/17/2013 Entry, and 10/22/2015 Entry. Additionally, the payment of $448.51 that ESB made on December 17, 2013, according to the Escrow Items Chart, is not reflected in the Escrow Interest Chart. Consequently, the Court adjusts for these inconsistencies and awards ESB $87,014.49 in escrow advances, and $35,333.42 in escrow interest.[11] These findings of the R&R are modified to that extent.

II. Default Judgment

As a side bar, ESB also moves for default judgment against the defaulting defendants. The R&R, citing to the May 17, 2016 Order granting summary judgment, characterized this relief as

---

[10] Moreover, that the interest rate is excessive is merely a rehashing of Bowen's pre-R&R opposition, *see* Dkt. No. 72. *See Chinnery v. N.Y. State Office of Children & Family Servs.*, No. 10 CIV. 0882 DAB, 2015 WL 1029601, at *1 (S.D.N.Y. Mar. 10, 2015) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.") (citation omitted), *appeal dismissed* (Oct. 22, 2015). The Court does not review this rehashed argument *de novo* and finds no clear error on Judge Scanlon's challenged findings regarding this interest rate.

[11] The Court has relied upon the Escrow Interest Chart to calculate the reduced total escrow costs incurred by ESB from 3/23/2010 forward ($90,087.45-$3072.96). *See* Escrow Interest Chart. Correspondingly, the Court also reduced the escrow interest by $259.17. *See id.*

11

"extraneous and unnecessary" since "the [d]istrict [c]ourt has already granted the relief request." R&R at 2. The May 17, 2016 Order, cited in the R&R, provided:

> [ESB] also seeks to default [the defaulting defendants] for failing to respond to the complaint. In compliance with the requirements of Rule 55(a) and Local Civil Rule 55.1, [ESB] has submitted an affirmation showing (1) that these parties are not infants, in the military, or incompetent persons; (2) that they have failed to plead or otherwise defend the action; and (3) that the complaint was properly served on them. Accordingly, the Clerk of Court is directed to issue a certificate of default against [the defaulting defendants].

5/17/16 Order at 13-14. That order went on to "grant" ESB's "motion to default [the defaulting defendants]." *Id.* at 14.[12]

Currently, there appears to be confusion regarding whether the Court, in its May 17, 2016 Order, *granted* ESB's motion for default judgment against the defaulting defendants pursuant to Federal Rule of Civil Procedure 55(b), or simply noted ESB's *compliance* with the preliminary requirements of Rule 55(a). Clearly, pursuant to the Court's Individual Rules, "motions for default judgment will not be considered absent prior issuance of a certificate of default by the Clerk of Court in accordance with Local Civil Rule 55.1." Rule III.F, Individual Motion Practice & Rules of Judge Eric N. Vitaliano; *see also Tarbell v. Jacobs*, 856 F. Supp. 101, 104 (N.D.N.Y. 1994) (citing 10 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (1983)). Indeed, only after the party seeking a default judgment passes the 55(a) hurdle, does the plaintiff get to Rule 55(b), which outlines how the Clerk may enter default judgment in certain scenarios, Rule 55(b)(1), or, in other cases, how the Court may grant such a judgment, Rule 55(b)(2). *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("Rule 55 of the *Federal Rules of Civil*

---

[12] The Clerk of Court then entered the Certificate of Default on June 15, 2016 as to the defaulting defendants. *See* 6/15/2016 Dkt. Entry. At the Court's instruction, ESB served the Certificate on the defaulting defendants on September 14, 2016. *See* Dkt. No. 73.

*Procedure* provides a two-step process for obtaining a default judgment."); *Getty Images (US) Inc. v. Advernet, Inc.*, No. 09 CIV. 1895 KNF, 2010 WL 4536995, at *4-5 (S.D.N.Y. Nov. 2, 2010).

Notwithstanding, given that this is a foreclosure action and the defaulting parties are for all intents and purposes nominal defendants from a practical perspective, it was the Court's intention to grant default judgment against them even though not all of the procedural bases had been touched. With apologies for the procedural bypass and out of an abundance of caution and at the risk of being overly formulaic, the Court here finds that the claims upon which judgment is to enter against the defaulting defendants are supported by well-pleaded factual allegations sufficient to establish a right to the relief sought by ESB. *See Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013). ESB's motion for default judgment as to the nonresponding, essentially nominal defendants is granted.

## Conclusion

For the reasons set forth above, Bowen's objections to the Report & Recommendation of Magistrate Judge Vera M. Scanlon, dated February 6, 2017, are overruled to the extent indicated and the R&R is adopted, as modified by this Order, as the opinion of the Court.

The Clerk of Court is further directed to enter judgment in the amount of **$646,296.93** for ESB and enter the Proposed Judgment of Foreclosure and Sale, annexed hereto as Exhibit A. The judgment amount includes:

- $279,632.45 in unpaid principal;
- $225,849.75 in interest accrued on the unpaid principal through July 15, 2016;
- $527.35 in late fees;
- $87,014.49 in escrow advances;
- $35,333.42 in interest accrued on escrow advances;

- $14,887.50 in attorney's fees; and
- $3,051.97 in costs.

Plaintiff's motion for default judgment is granted against the defaulting defendants.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to close this case for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
      May 20, 2017

/S/ USDJ ERIC N. VITALIANO
-----------------------------------
ERIC N. VITALIANO
United States District Judge